ALBAUGH et al., Appellants,

v.

CITY OF COLUMBUS, DIVISION of POLICE, Appellee.

[Cite as *Albaugh v. Columbus Div. of Police* (1999), 132 Ohio App.3d 545.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 98AP–901 and 98AP–989.

Decided March 30, 1999.

546

*Andrew J. Ruzicho,* and *Andrew J. Ruzicho II*; *Jay F. McKirahan* and *Keith E. Whann,* for appellants.

*Janet E. Jackson,* City Attorney, *John H. Sumner* and *Kristine L. Hayes,* Assistant City Attorneys, for appellee.

TYACK, Judge.

On January 24, 1997, Yolanda Albaugh and ninety-six other persons filed a complaint in the Franklin County Court of Common Pleas against the city of

Columbus, Division of Police.[1]  The plaintiffs were civilian employees, specifically, communication technicians, of the Division of Police and claimed the division's policy of denying "second-day-off overtime" to civilian employees, who were predominately female, constituted discrimination on the basis of sex in violation of R.C. 4112.02.  Sworn personnel (police officers), who were predominately male, were permitted to work second day-off overtime.

Second-day-off overtime allows an employee to be compensated at double his or her normal rate of pay if the employee works on what would normally be the employee's second day off of work.  Civilian employees are represented by Local 1632 of the American Federation of State, County and Municipal Employees ("AFSCME") and sworn personnel are represented by the Fraternal Order of Police, Capital City Lodge No. 9 ("FOP").  Both the AFSCME and FOP collective bargaining agreements with the division contained essentially the same provisions allowing second-day-off overtime.  However, the plaintiffs alleged the division had a policy that permitted only sworn personnel to use second-day-off overtime.

AFSCME filed a grievance on April 10, 1992, alleging the division had violated the contract by denying the civilian personnel the opportunity to work or to volunteer to work on their second day off.  On February 20, 1996, an arbitrator issued a decision sustaining the grievance and ordering the division to give all civilian employees an equal opportunity to volunteer to work on what would regularly be their second consecutive day off.

In the present suit, the plaintiffs request an order (1) permanently enjoining the division from violating the rights of the plaintiffs, (2) granting the plaintiffs back pay, lost fringe benefits and prejudgment interest, and (3) awarding the plaintiffs compensatory, emotional distress, and punitive damages, plus costs and attorney fees.

On March 30, 1998, the division filed a motion for summary judgment.  The division contended, in part, that the plaintiffs could not establish a prima facie case of discrimination under the disparate impact theory, the primary theory under which the plaintiffs brought their claim.  The plaintiffs filed a memorandum contra, contending disparate impact was the appropriate analysis and setting forth the arguments in support of their claim.

On June 18, 1998, the trial court rendered a decision granting the division's motion for summary judgment.  The trial court found the plaintiffs had not offered relevant statistics in support of their claim that the division's policy of denying second-day-off overtime to civilian employees had an adverse impact on

---

1.  On February 24, 1997, an amended complaint was filed, adding one new plaintiff, and on November 13, 1997, a second amended complaint was filed, adding seven new plaintiffs.

females. The trial court stated that the plaintiffs had used statistics comparing sworn personnel to civilian employees and that such comparison was not relevant, since the job classifications were distinct. The trial court stated that the plaintiffs should have presented statistics that showed that similarly situated civilian employees occupying male-dominated offices were permitted to work overtime while the plaintiffs were not so permitted. Then, the trial court stated, the plaintiffs could have argued they were discriminated against on the basis of sex. Further, the trial court found that even if the plaintiffs had offered relevant statistical evidence, they could not overcome the division's business justification for the policy: lower payroll costs.

The plaintiffs have appealed to this court,[2] assigning the following as error:

"1. The trial court erred in holding that a significant disparate impact—less then one percent of a female-dominated job classification received second day off overtime while more than 98% of a male-dominated job classification received that overtime—was not relevant statistical evidence precluding summary judgment on a claim of employment discrimination.

"2. The trial court erred in confusing discrete theories of employment discrimination—disparate impact and disparate treatment—and then granting summary judgment when it (a) required employees claiming disparate impact discrimination to prove bias; (b) relieved the employer of its burden of persuasion on a legitimate business justification for a disparate impact; and (c) denied the employees a trial on whether less discriminatory alternatives existed to equally well serve the employer's business needs."

The assignments of error are interrelated and, therefore, will be addressed together. Appellants contend summary judgment was inappropriate because there existed a genuine issue of material fact as to whether the division violated R.C. 4112.02. Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204, citing *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. Our review is *de novo.* See *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 30 OBR 78, 506 N.E.2d 212.

R.C. 4112.02 states:

---

**2.** Appellants prematurely filed a notice of appeal on July 13, 1998. They then filed a second notice of appeal from the trial court's July 23, 1998 judgment entry. These "appeals" have been consolidated.

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * sex * * * of any person * * * to discriminate against that person with respect to * * * terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

Federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq.*, Title 42, U.S.Code, is generally applicable to cases arising under R.C. Chapter 4112. *Plumbers & Steamfitters Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202–203, 421 N.E.2d 128, 131. Appellee's main argument in support of its motion for summary judgment is that the theory under which appellants brought their case, disparate impact, is inapplicable. Appellee contends appellants should have brought their claim under the disparate treatment theory. Therefore, we will first address the issue of whether appellants' claim was properly brought under the disparate impact theory.

There are, essentially, two theories of employment discrimination: disparate treatment and disparate impact. See *Hazen Paper Co. v. Biggins* (1993), 507 U.S. 604, 609, 113 S.Ct. 1701, 1705–1706, 123 L.Ed.2d 338, 346. Disparate treatment is the most easily understood type of discrimination; the employer simply treats some people less favorably than others because of their race, color, or other protected characteristics. *Id.*, quoting *Teamsters v. United States* (1977), 431 U.S. 324, 335–336, 97 S.Ct. 1843, 1854–1855, 52 L.Ed.2d 396, 415–416, fn. 15. In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision. *Hazen Paper Co.* at 610, 113 S.Ct. at 1705–1706, 123 L.Ed.2d at 346–347. For example, the employer may have relied upon a formal, facially discriminatory policy that required adverse treatment of protected employees, or the employer may have been motivated by the protected trait on an *ad hoc,* informal basis. *Id.* The Supreme Court cited as an example of disparate treatment the situation where an older employee is terminated because the employer believes productivity and competence decline with old age. *Id.*

As to the requirements in order to establish discrimination in a disparate treatment case, the plaintiff has the burden of proving a prima facie case of discrimination. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207, 214–215. Such burden is not onerous. For example, a plaintiff would have to prove that she applied for an available position for which she was qualified but was rejected under circumstances that give rise to an inference of unlawful discrimination. *Id.* at 253, 101 S.Ct. at 1093–1094, 67 L.Ed.2d at 215, fn. 6. The burden of production then

shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action. *Id.* at 253, 255, 101 S.Ct. at 1093–1094, 1094–1095, 67 L.Ed.2d at 215, 215. If this burden is carried by the defendant, the plaintiff has the opportunity to prove that the reason stated was a pretext for discrimination. *Id.* at 253, 101 S.Ct. at 1093–1094, 67 L.Ed.2d at 215. The ultimate burden of persuasion always remains with the plaintiff. *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. The plaintiff must ultimately show that she was the victim of *intentional* discrimination. *Id.; Watson v. Fort Worth Bank & Trust* (1988), 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827, 839–840 (a plaintiff is required to prove that the defendant acted with discriminatory intent or motive).

■ Disparate impact, on the other hand, involves employment practices that are facially neutral in their treatment of different groups but fall more harshly on one group. *Hazen Paper Co.,* 507 U.S. at 609, 113 S.Ct. at 1705–1706, 123 L.Ed.2d at 346. Proof of discriminatory motive is not required. *Id.; Watson,* 487 U.S. at 986–987, 108 S.Ct. at 2784–2785, 101 L.Ed.2d at 839–840, citing *Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. The factual issues and the character of the evidence are inevitably different when the plaintiff does not have to show intentional discrimination. *Watson* at 987, 108 S.Ct. at 2785, 101 L.Ed.2d at 840. The evidence usually consists of statistical disparities, rather than specific incidents, and on the competing explanations for such disparities. *Id.*

■ In a disparate impact case, the plaintiff's burden goes beyond the need to show statistical disparities, and the plaintiff must begin by identifying the specific employment practice that is challenged, and that is allegedly responsible for any observed statistical disparity. *Wards Cove Packing Co., Inc. v. Atonio* (1989), 490 U.S. 642, 656, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733, 750–751, quoting *Watson,* 487 U.S. at 994, 108 S.Ct. at 2788–2789, 101 L.Ed.2d at 844–845. It is essential that the practices identified be linked causally with the demonstrated adverse impact. *Wards Cove Packing Co., Inc.* at 656–657, 109 S.Ct. at 2124–2125, 104 L.Ed.2d at 750–752.

■ If the plaintiff sets forth a prima facie case, the defendant employer then has the burden to show a business justification for the practice. See *id.* at 659, 109 S.Ct. at 2125–2126, 104 L.Ed.2d at 752–753. We note that since *Wards Cove Packing Co., Inc.,* which held the defendant's burden is one of production, *id.* at 659, 109 S.Ct. at 2125–2126, 104 L.Ed.2d at 752–753, Title VII was amended by the Civil Rights Act of 1991, and now the defendant's burden is one of persuasion. See Section 2000e–2(k)(1)(A)(i). Title 42, U.S.Code; *Davey v. Omaha* (C.A.8, 1997), 107 F.3d 587, 591–592; *Fitzpatrick v. Atlanta* (C.A.11, 1993), 2 F.3d 1112, 1117. A mere insubstantial justification will not suffice, and the dispositive issue

is whether the practice serves the legitimate employment goals of the employer in a significant way. *Wards Cove Packing Co., Inc.*, 490 U.S. at 659, 109 S.Ct. at 2125–2126, 104 L.Ed.2d at 752–753.

■ If the defendant succeeds in demonstrating business necessity, the plaintiff has the opportunity to show that another policy or practice, without a similarly undesirable effect, would also equally serve the employer's legitimate business interests. *Id.* at 660–661, 109 S.Ct. at 2126–2127, 104 L.Ed.2d at 753–754.

■ Having set forth the two theories of employment discrimination, we find that appellants properly brought their claim under the disparate impact theory. Appellee contends this is a disparate treatment case because appellee's practice intentionally treated two separate job classifications differently. Appellee states that even appellants claimed there were two policies here: one—sworn personnel were permitted to use second-day-off overtime; and, two—civilian employees were not permitted to use second-day-off overtime. However, appellee's contention involves mere semantics and misconstrues the word "treatment."

All employment discrimination cases involve some sort of "treatment." Likewise, one could argue that even in a classic disparate impact case such as *Griggs*, there were two policies: those who pass a standardized test and/or have a high school diploma get hired; those who do not are not hired. This different "treatment," however, did not turn the case into a disparate treatment case. *Griggs*, as in the case at bar, involved a facially neutral practice that had an adverse impact on a racial minority. Disparate treatment cases, however, usually involve an employer intentionally discriminating against a person or group of persons who belong to a protected class. This analysis would not apply here because appellants do not argue appellee intentionally treated them differently because most of them were female.[3]

What is involved here is a facially neutral policy that differentiates between job classifications—only sworn personnel may use second-day-off overtime. This is facially neutral because "sworn personnel" does not in and of itself equal "males," and "civilian personnel" does not in and of itself equal "females." Indeed, there are female sworn personnel, and there are male civilian personnel. However, because the vast majority of civilian personnel are female and the vast majority of sworn personnel are male, the policy adversely affects females.

---

**3.** We do note that appellants could have also brought this case under a disparate treatment theory if they so chose. Either theory may be applied to a particular set of facts, and a plaintiff may proceed on either or both. *Teamsters*, 431 U.S. at 335, 336, 97 S.Ct. at 1854, 1855, 52 L.Ed.2d at 415, 416, fn. 15; *Lynch v. Freeman* (C.A.6, 1987), 817 F.2d 380, 382.

An analogous case to the one at bar is *EEOC v. Ball Corp.* (C.A.6, 1981), 661 F.2d 531. In *Ball Corp.*, a group of female employees sued their employer under the disparate impact theory. In the corporation, female employees were, for the most part, confined to certain job classifications. *Id.* at 533–534. The employment contract contained facially neutral terms: in departments that ran on three shifts, the normal working day for "finishers" was eight hours, including a thirty-minute unpaid lunch. *Id.* at 540. All other production workers worked eight-hour shifts, could eat lunch when the workload permitted, and were paid for a full eight-hour shift. *Id.* at 535, 540. The court found disparate impact was the correct analysis because it involved a facially neutral practice that had an adverse impact on females (they were precluded from working a full, eight-hour day) since most finishers were female. *Id.* at 540. Hence, a disparate impact analysis is not precluded merely because different job classifications are involved.

■ Having found appellants properly brought this case under the disparate impact theory, we now address whether or not summary judgment was appropriate. As indicated above, appellants have the initial burden of setting forth a prima facie case by first identifying the specific employment practice that is allegedly responsible for the disparity. Here, such practice consists of appellee's policy—despite the availability of it to civilian employees under the AFSCME contract—of allowing only sworn personnel to use second-day-off overtime.

A disparate impact on women as a result of such policy was clearly shown. Appellants submitted figures (taken from 1995) showing sworn personnel were predominately male (87.5 percent male, 12.5 percent female) and civilian personnel were predominantly female (77.1 percent female, 22.9 percent male). We note that the latter figure consists of all civilian employees, which include more job classifications than just communication technicians. In 1995, there were one hundred communication technicians, eleven of whom were male.

In 1995, a total of 23,787.4 hours of second-day-off overtime was worked. Only 397.2 of such hours were worked by civilian employees—not even two percent of the total. Communication technicians worked a total of thirty-eight hours of second day-off overtime. In 1995, 1,023 sworn personnel received second-day-off overtime. Thirty civilian employees received such overtime, four of whom were communication technicians.

Appellants' expert, David F. Shama, calculated the standard deviations from the norm for two scenarios: (1) the number of civilians working second-day-off overtime, and (2) the number of overtime hours worked by civilians in relation to the total number of such overtime worked by all personnel. In scenario number one, the number of standard deviations was 13.36. In scenario number two, the number of standard deviations equaled approximately sixty-eight. Shama stated that the standard deviation formula allows one to predict the likelihood of a

certain outcome and that ninety-eight percent of all possible outcomes are contained within the first two standard deviations of the expected value. Any outcome falling outside of two standard deviations (the remaining two percent) is normally rejected. Shama stated, and we agree, that such results are not surprising, given the policy of prohibiting such overtime for civilians. He lastly concluded that given the large percentage of women that compose the civilian employee population, the policy had a disparate impact on female civilian employees.

Appellee does not refute appellants' statistical evidence. Appellee does attempt to discredit the probative value of such evidence on the basis that appellants are comparing two different job classifications. However, we have already concluded that a disparate impact analysis does apply here despite the differing job classifications. Contrary to appellee's contention, the reasoning for the rejection of the plaintiffs' statistical evidence in *Wards Cove Packing Co., Inc.* is not applicable to the case at bar.

In *Wards Cove Packing Co., Inc.*, the plaintiffs brought suit against employers alleging the employers' hiring/promotion practices resulted in a racial stratification of the workforce. *Id.*, 490 U.S. at 647–648, 109 S.Ct. at 2119–2120, 104 L.Ed.2d at 745–746. Specifically, the unskilled, cannery jobs were filled predominantly by nonwhite persons and the skilled, noncannery jobs were filled predominately by white persons. *Id.* at 647, 109 S.Ct. at 2119–2120, 104 L.Ed.2d at 745. In support of their claim, the plaintiffs presented statistics showing a high percentage of nonwhite workers filled the cannery positions, and a low percentage of nonwhite workers filled the noncannery positions. *Id.* at 650, 109 S.Ct. at 2121, 104 L.Ed.2d at 747. The Supreme Court stated that the proper comparison was between the racial composition of the at-issue jobs and the racial composition of the qualified population in the relevant labor market. *Id.*, quoting *Hazelwood School Dist. v. United States* (1977), 433 U.S. 299, 308, 97 S.Ct. 2736, 2741–2742, 53 L.Ed.2d 768, 777–778.

Appellee cites *Wards Cove Packing Co., Inc.* in support of its contention that one cannot use statistics that compare two different jobs to show discrimination. While this happened to be the result under the fact pattern in *Wards Cove Packing Co, Inc.*, it is not relevant to the fact pattern in the case at bar. Here, appellants did not seek employment as sworn personnel. The fact pattern here is completely different. *Ward Cove Packing Co., Inc.* did not preclude, under any and all fact patterns, the use of statistics that compare one job to another. Appellants' statistics are relevant to and probative of their claim—that the facially neutral policy of allowing only sworn personnel the opportunity to work second-day-off overtime had an adverse impact on females.

■ Appellee now has the burden of showing a business justification for its policy. In its motion for summary judgment, appellee indicated that its policy was justified because it was not necessary for civilian employees to use second-day-off overtime and if appellee did allow them to do so, it would have been a substantial financial burden. Moreover, there was little to no evidence to actually support this mere statement.

Patty Orders, appellee's payroll supervisor, testified that prior to the arbitration decision, second-day-off overtime was discouraged division-wide as a cost-saving measure and was only used on an emergency basis. This was essentially the only evidence presented by appellee as to cost containment. Appellants, on the other hand, presented evidence that appellee circumvented second-day-off overtime for communication technicians by requiring them to stay past their regular shift, sometimes for eight hours more. In addition, appellants presented evidence that after appellee was ordered to allow civilian employees the same opportunity to work second-day-off overtime, second-day-off overtime for civilian employees increased significantly—from 397.2 hours in 1995 to 13,637.06 hours in 1997. Orders testified that since the arbitration, appellee had increased its payment of overtime, and there had been a dramatic increase in the budget for civilian overtime.

This evidence raises a genuine issue of fact as to the legitimacy of appellee's stated business justification. Therefore, summary judgment in favor of appellee was and is inappropriate. Accordingly, appellants' assignments of error are sustained.

Appellants' assignments of error having been sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

BOWMAN and BROWN, JJ., concur.