[Cite as *Kudla v. Olympic Steel, Inc.*, 2014-Ohio-5142.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101104**

**THOMAS M. KUDLA**

PLAINTIFF-APPELLANT

vs.

**OLYMPIC STEEL, INC., ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-786525

**BEFORE:** Jones, J., Celebrezze, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** November 20, 2014

**ATTORNEYS FOR APPELLANT**

Caryn M. Groedel
Chastity L. Christy
Lori M. Griffin
Caryn Groedel & Associates Co., L.P.A.
31340 Solon Road
Suite 27
Solon, Ohio 44139


**ATTORNEYS FOR APPELLEES**

Maynard A. Buck
Richard Hepp
Katrina Tesner
Benesch, Friedlander, Coplan, & Aronoff, L.L.P.
200 Public Square
Suite 2300
Cleveland, Ohio 44114

LARRY A. JONES, SR., J.:

{¶1} Plaintiff-appellant, Thomas M. Kudla, appeals from the trial court's February 2014 decision granting summary judgment in favor of defendants-appellees, Olympic Steel, Inc. and Richard Manson. We reverse and remand.

## I.    Procedural History

{¶2} In July 2012, Kudla initiated this action against Olympic Steel and Richard Manson, who at the time was Olympic Steel's vice president of human resources. At the time Kudla filed this action, he was employed at Olympic Steel as a corporate human resources manager.

{¶3} Shortly after filing this action, Kudla filed an amended complaint. His initial and amended complaints alleged claims for relief based on age discrimination, retaliation, and defamation. The defendants answered the first amended complaint and, in March 2013, filed a motion for summary judgment as to all claims.

{¶4} While the summary judgment motion was pending, Olympic Steel terminated Kudla. Kudla filed a brief in opposition to defendants' summary judgment motion, leave to file a second amended complaint, leave to reopen discovery, and a request that the ruling on the summary judgment motion be stayed until the completion of discovery. The trial court granted Kudla's requests.

{¶5} In his second amended complaint, Kudla asserted claims for relief for wrongful termination based on age discrimination and retaliation. The defendants answered Kudla's second amended complaint and filed another summary judgment motion in regard to the claims set forth in the second amended complaint. Kudla filed a motion in opposition to defendants' summary judgment motion that included the affidavit of Margaret Gasparik. The defendants filed a motion to strike Gasparik's affidavit; the trial court granted the motion. Kudla has not

appealed from the judgment striking Gasparik's affidavit; the affidavit is therefore not part of the record for our consideration.

{¶6} In February 2014, the trial court granted defendants' motion for summary judgment on Kudla's claims.

II.   Facts

{¶7} Kudla was born in April 1947, and was in his 60's when the alleged incidents that give rise to this case occurred.   In 2007, Olympic Steel hired Kudla as a corporate resources manager to replace Laurel Zurawick, who was being promoted to the director of corporate human resources.   Kudla trained under Zurawick for approximately one year and performed general corporate human resources functions.

{¶8} Zurawick left Olympic Steel in 2008, and the company hired Tom Clevidence to replace her.   Kudla worked under Clevidence until Clevidence left the company in 2010. Kudla was offered the director of corporate human resources position, but declined.

{¶9} In March 2010, defendant Manson, who worked in finance and accounting for the company, was promoted to be the corporate human resources director.   Manson testified at deposition that the company sought to have him stabilize the corporate human resources department after the recent turnovers in directors.   He further testified that he accepted the position with the understanding that he would be in the position for approximately three years. Thus, part of his job as corporate human resources director was to identify and groom his successor.   Once that was achieved, Manson planned to return to the finance and accounting side of the business.

{¶10} Manson hired John David as a corporate human resources manager; David was 38 years old at the time.   He also transferred Lori Ferreri from the payroll department to the human

resources department; Ferreri was 45 years old at the time.

{¶11} Kudla maintains that Manson immediately put into effect a "plan" to "makeover" the human resources department with younger employees, many of whom Kudla had to train, and then fire Kudla.

{¶12} Olympic Steel maintains that Manson's only "plan" was to stabilize the human resources department before he returned to his area of interest, and that Kudla was terminated for violating company policy, the specifics of which will be discussed below.

**Litigation Involving Another Employee**

{¶13} Shirley Li worked for Olympic Steel in information technology (IT). In May 2010, Li was given a written discipline; Kudla signed it. In July 2010, Li's supervisor contacted Kudla about terminating Li's employment. Kudla responded in an email as follows:

> Typically substandard performance is documented with progressive improvement program, written warnings, etc. To my knowledge we really do not have documentation in this area. There have been some discussions but I am not sure of any formal documentation. We also have no terminable violations to policy in this situation. Not much to stand on in the case of a challenge. Thus the consideration of a minimal package. Additionally, you are aware that I have been working with Shirley in the attempt to help her out the door. We can discuss further as soon as possible tomorrow.

{¶14} "Helping her out the door" referred to Kudla's efforts to help Li obtain another job. Kudla testified that "immediately" after he sent the email, he remembered the May 2010 disciplinary warning and informed Li's supervisor in person.

{¶15} Li was terminated and sought unemployment compensation. Kudla responded to a request from the Ohio Department of Job and Family Services (ODJFS), which administers unemployment benefits. In response to the department's questioning about the reason for Li's termination, Kudla responded:

(1) Shirley Li's job did change from the one she was originally hired for.

(2) Yes, Shirley Li was hired for SEMS project support. She was then assigned to AX project support. Her skills did not match the project['s] requirements. This was not her fault.
(3) The position responsibilities did change.

{¶16} Further, Li, in seeking other employment, asked Kudla for a recommendation letter and he obliged. The letter read, in part, that Li "demonstrated that she is a dedicated IT professional who has the ability to multitask and manage conflicting priorities. Unfortunately due to realignment her position has been affected."

{¶17} In 2010, Li sued Olympic Steel for wrongful termination. Kudla, as corporate human resources manager, was the main Olympic Steel representative involved in the discovery phase of the litigation. According to Olympic Steel, Kudla's characterization of Li's termination during the unemployment benefits proceeding and his statement "not much to stand on in the case of a challenge" posed problems for the company in its defense of the case.

{¶18} Kudla was deposed twice during the course of the Li litigation. Olympic Steel contends that he gave false testimony both times, causing further "serious problems" for its defense of the case. One of the depositions was suspended, and Olympic Steel filed an interlocutory appeal. *See Li v. Olympic Steel, Inc.*, 8th Dist. Cuyahoga No. 97286, 2012-Ohio-603.

{¶19} According to Kudla, Li was hired to work on one project, but then assigned to work on a different project. She was eventually transferred to the project for which she was hired, but the company decided that her "skills did not meet the needs of the project," and sought to terminate her. Because, according to Kudla, Li had been "shuffled around due to Olympic Steel's poor timing in hiring her," he and other managers and supervisors decided that she should be terminated because her "job skills did not match the position's requirements."

**{¶20}** Thus, Kudla defends the language he used in response to ODJFS's questions regarding Li's request for unemployment compensation. Kudla admitted that he made some inaccurate statements at deposition, but contended that his memory and concentration at the time were affected by medication he was on.

**{¶21}** Olympic Steel settled the lawsuit with Li. Kudla maintains that Olympic Steel blamed and punished him for what they perceived as his "mis-step" with the Li litigation.

**Manson's Reorganization Plan**

**{¶22}** Manson testified that after the Li litigation, the company "lost all confidence" in Kudla to handle matters that required the exercise of independent judgment. According to Manson, in addition to the company's loss of confidence in Kudla based on the Li litigation, other problems were also present. Manson identified these other problems as Kudla's: (1) "disrespectful attitude" toward coworkers; (2) improper use of email; (3) arriving late at the company's human resources conference; (4) creating "problems with paging in new Handbook updates"; (5) "inconsistent wording in offer letters"; and (6) use of the "old version of Vacation Request Form for himself."

**{¶23}** Manson further testified that he also decided that the two people he had brought into the department when he started, David and Ferreri, were not right to take over the department. Manson identified another employee, Michelle Pearson-Casey, as a possible person to run the department. Pearson-Casey had been working in the human resources department for five years as a communications specialist and manager. Pearson-Casey was in her 30's.

**{¶24}** Manson believed that the department could operate more efficiently with three corporate managers, and he envisioned Pearson-Casey heading up the department. Under this plan, the department would be overstaffed (Pearson-Casey, Kudla, David, and Ferreri). Manson

determined, therefore, that one corporate human resources manager position needed to be eliminated.

**Kudla's First Termination; Later Rescinded**

{¶25} In January 2012, Manson and one of Olympic Steel's attorneys met with Kudla and told him that, due to reorganization in the department, his position was being eliminated, effective in mid-April 2012.

{¶26} Kudla retained an attorney because he believed he had been discriminated against based on his age. In a March 2012 letter to the company, the attorney wrote that Kudla had a "strong age discrimination claim against Olympic Steel and Mr. Manson." Counsel urged the company to contact her to discuss the situation and "determine whether we can arrive at a mutually agreeable resolution."

{¶27} In an April 2012 letter from Manson to Kudla, Manson told Kudla that the company was "committed to moving forward with the reorganization of the department," but it "decided not to eliminate your position as originally planned." Manson further wrote that Kudla would "remain employed as Corporate Human Resources Manager, with no change in your compensation, benefits or other terms and conditions of employment."

**Kudla's Continued Employment at Olympic Steel**

{¶28} Pursuant to Manson's letter, Kudla remained at Olympic Steel. Manson testified that he met with Kudla to discuss his duties. Manson told Kudla that he would be assigned to "special projects." Manson testified that Kudla would also be responsible for several of his prior duties.

{¶29} Kudla contends that he was retaliated against as he continued his employment with the company. For example, Kudla states that he was forced to move out of his office into a

cubicle, making him the only human resources manager without an office; he was excluded from meetings and certain communications; and he was under "surveillance."

**Second Termination**

{¶30} On April 15, 2013, Olympic Steel terminated Kudla for violating the company's "spousal opt-out policy." The spousal opt-out policy was implemented by the company for existing employees in 2009 as a cost-cutting measure for employee health-care benefits. In a communication to employees, the company explained the policy as follows:

> Spousal Opt-Out is a change to the **dependent eligibility definition** within our benefits policy. The policy requires spouses of employees, who are *eligible* for employer sponsored healthcare coverage, to enroll in primary Medical and Prescription coverage with their employer's healthcare plan.
>
> This policy will not affect coverage for employees of Olympic Steel or dependent children. The requirement is simply that working spouses who have coverage available through their employer, enroll in their employer's plan first.
>
> Spouses who comply with the new policy will still be permitted to enrol in the Olympic Steel, Inc. Employee Benefit Plan for secondary coverage.

(Emphasis sic.)

{¶31} The plan took effect for existing employees on January 1, 2009. In July 2012, Kudla's wife became eligible for health insurance benefits through her employer. Kudla did not inform the company. Kudla's wife submitted two health insurance claims under Olympic Steel's benefits subsequent to July 2012, when she was eligible for benefits under her employer's plan. Olympic Steel paid both claims as the primary insurer. The company terminated Kudla in April 2013 for violating the spousal opt-out policy.

{¶32} Kudla maintains that his termination was a "pretextual mask for age discrimination" and denies that he violated the policy.

### III. Law and Analysis

**Summary Judgment Review**

{¶33} Our review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *See also Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶34} To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the movant satisfies this burden, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 293, quoting Civ.R. 56(E).

### A. Age Discrimination

{¶35} Two statutes in R.C. Chapter 4112 address age discrimination: R.C. 4112.02 and 4112.14. R.C. 4112.02(A) generally prohibits discriminatory employment practices, including age discrimination, and R.C. 4112.14 specifically addresses age discrimination. *Meyer v. United Parcel Service, Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, paragraph one of the syllabus ("An age discrimination claim brought pursuant to R.C. 4112.99 is subject to the substantive provisions of R.C. 4112.02 and 4112.14.").

{¶36} R.C. 4112.14(A) provides:

> No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically

able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee.

**{¶37}** Under R.C. 4112.14(B), "[a]ny person aged forty or older who is discriminated against in any job opening or discharged without just cause by an employer in violation of division (A) of [R.C. 4112.14] may institute a civil action against the employer in a court of competent jurisdiction."

**{¶38}** "In deciding cases brought under R.C. 4112.14[,] * * * Ohio courts may rely on federal anti-discrimination case law." *Tilley v. Dublin*, 10th Dist. Franklin No. 12AP-998, 2013-Ohio-4930, ¶ 21, citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272 (1996).

**{¶39}** "A plaintiff in a discrimination lawsuit may pursue 'essentially, two theories of employment discrimination: disparate treatment and disparate impact.'" *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. Franklin No. 11AP-1068, 2012-Ohio-5036, ¶ 14, quoting *Albaugh v. Columbus Div. of Police*, 132 Ohio App.3d 545, 550, 725 N.E.2d 719 (10th Dist.1999), citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993); *see also Caldwell v. Ohio State Univ.*, 10th Dist. Franklin No. 01AP-997, 2002-Ohio-2393, ¶ 57, 63 (recognizing both theories in an age discrimination claim brought under R.C. Chapter 4112). Kudla contends that Olympic Steel and Manson engaged in disparate treatment age discrimination against him.

**{¶40}** "Disparate treatment is the most easily understood type of discrimination; the employer simply treats some people less favorably than others because of their race, color, or other protected characteristics." *Albaugh* at *id.*, citing *Hazen Paper* at 609. "In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision." *Id.*, citing *Hazen Paper* at 610. Thus, to prevail on a disparate treatment

age discrimination claim, the plaintiff must prove discriminatory intent. *Davenport v. Bur. of Workers' Comp.*, 10th Dist. Franklin No. 01AP-827, 2002-Ohio-2768, ¶ 29, citing *Mauzy* at 583.

{¶41} A plaintiff may attempt to prove discriminatory intent through direct evidence or indirect evidence. *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, 837 N.E.2d 1169, ¶ 9-11. (Because of the difficulty of proving a discrimination claim, especially where there is no direct evidence of discriminatory motive, the [United States] Supreme Court created an analytical framework to address "the order and allocation of proof' in such cases." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 * * * [(1973)].); *see also Cittadini v. Southwest Gen. Health Sys.*, 8th Dist. Cuyahoga No. 96254, 2011-Ohio-6464, ¶ 15.

{¶42} When relying on indirect evidence to prove discriminatory intent, courts rely on the burden-shifting paradigm articulated in *McDonnell Douglas*. *Williams* at ¶ 9; *see also Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, 803 N.E.2d 781, ¶ 8-9 (courts should apply the *McDonnell Douglas* paradigm in age-discrimination cases).

{¶43} Under this paradigm, the plaintiff must first establish a "prima facie case," which in turn shifts the burden to the employer to articulate a legitimate non-discriminatory reason for the adverse employment action. The burden then shifts back to the employee to establish that the employer's proffered reason is a mere pretext for unlawful discrimination. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996).

{¶44} Absent direct evidence of age discrimination, in order to establish a prima facie case of a violation of R.C. 4112.14(A) in an age employment discharge action, a plaintiff-employee must demonstrate that he (1) was a member of a statutorily-protected class; (2) suffered an adverse employment action (3) was qualified for the position; and (4) was replaced by a person who is not a member of the protected class or that similarly situated, non-protected employees

were treated more favorably. *Janezic v. Eaton Corp.*, 8th Dist. Cuyahoga No. 99897, 2013-Ohio-5436, ¶ 21, citing *Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983).

**Kudla's Prima Facie Case**

*Member of Statutorily Protected Class*

{¶45} In considering Kudla's prima facie case, it is undisputed that he was over the age of 40 when the events he complains about commenced. Thus, he was a member of a statutorily protected class under R.C. 4112.02.

*Adverse Employment Action*

{¶46} Kudla maintains that in addition to his termination, he suffered numerous adverse employment actions, such as being forced out of his office into a cubicle, making him the only human resources manager without an office; excluding him from meetings and certain communications; and placing him under "surveillance." Kudla also contends that he was "cut-off" from social activities that Manson engaged in with other, younger employees.

{¶47} Olympic Steel, on the other hand, contends that any changes in Kudla's status or responsibilities at the company only resulted in "mere inconvenience" and were not "disruptive enough to constitute an adverse employment action." In support of its position, the company cites that Kudla's title, pay, and benefits did not change when his responsibilities were altered, and that he continued to perform important work for the company.

{¶48} Generally, an adverse employment action is a materially adverse change in the terms and conditions of the plaintiff's employment. *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 593 (6th Cir.2007); *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 2003-Ohio-5340,

798 N.E.2d 1141, ¶ 38 (10th Dist.).  Adverse employment actions include any "'significant change in employment status, such as hiring, *firing*, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" (Emphasis added.)  *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir.2007), quoting *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998).

{¶49} Here, Kudla's termination in and of itself was sufficient to constitute an adverse employment action.  *See Putney v. Contract Bldg. Components*, 3d Dist. Union No. 14-09-21, 2009-Ohio-6718, ¶ 27.  Termination aside, however, Kudla presented sufficient evidence that, at least, created a question of fact as to whether he suffered an adverse employment action.

{¶50} For example, the company moved Kudla out of his office into a cubicle, which resulted in Kudla being the only manager in the human resources department without an office.  Olympic Steel contends that it was a temporary move, but in light of the company's apparent displeasure with Kudla over the Li litigation (which was not the proffered reason for his termination), an issue of fact exists.

{¶51} Moreover, it is hard to reconcile the company's position that Kudla's job did not change in light of its apparent lack of confidence in him, which, again, was not the proffered reason for his termination.  Olympic Steel maintains that Kudla still performed "important" work.  Presumably, every job for which the company pays an employee is important.  On this record, a question of fact exists as to whether Kudla suffered an adverse employment action.

*Qualified for Position*

{¶52} Kudla maintains that he was qualified for the position and executed it without incident prior to Manson supervising him.  He contends that he was "selected" by Olympic Steel to be "reorganized out of his job under the [company's] 1-person 'reorganization.'"  Kudla

contends that the reorganization was based on his age. Kudla maintains that the following evidence supports his claim that Olympic Steel had an "age consciousness": (1) a list of the dates that the company keeps with the ages of employees over the age of 60; and (2) the disproportionate number of younger versus older employees in the department.

{¶53} Olympic Steel contends that Kudla was not qualified for the position for the reasons already mentioned, that is, the company's loss of confidence in him based on the Li litigation, Kudla's "disrespectful attitude" toward coworkers, improper use of email, arriving late at the company's human resources conference, "problems with paging in new Handbook updates," "inconsistent wording in offer letters," and Kudla's use of the "old version of Vacation Request Form for himself."

{¶54} But "'the qualification prong turns on the objective qualities of the [employee], not a subjective belief on the part of the employer that the work product was deficient.'" *West-Kimmons v. Univ. of Toledo Med. Ctr.*, Ohio Ct. of Cl. No. 2011-12927, 2013-Ohio-5931, ¶ 15, quoting *Gaglioti v. Levin Group, Inc.*, 6th Cir. No. 11-3744, 2012 U.S. App. LEXIS 25625 (Dec. 13, 2012). The standard for determining whether an employee is qualified for a position is whether the plaintiff presents "'credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field.'" *West Kimmons* at *id.*, quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir.2003). The evidence shows that Kudla had approximately 30 years in the human resources arena and, thus, was qualified for the position.

*Replacement by non-protected person or more favorable treatment for similarly situated, non-protected employees*

{¶55} Olympic Steel contends that Kudla failed to establish a prima facie case of age discrimination because he was not replaced. Rather, the company maintains that the human

resources department was downsized and reorganized. But Kudla's contention is not entirely that he had been replaced but was also that he was treated differently from similarly situated, but younger, employees.

{¶56} Upon review, Kudla has presented sufficient evidence that, at least, creates a genuine issue of fact as to whether Kudla was treated differently from similarly situated younger employees.

{¶57} In light of the above, Kudla presented sufficient evidence to establish a prima facie case of age discrimination. Therefore, under *McDonnell Douglas*, 411 U.S. at 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the burden would shift to Olympic Steel to offer its non-discriminatory reason for Kudla's termination.

**Olympic Steel's Reason for Kudla's Termination**

{¶58} Olympic Steel's proffered reason for terminating Kudla was his violation of the spousal opt-out policy.

**Kudla's Reasons for why Olympic Steel's Reason was Pretextual**

{¶59} Kudla contends that he presented sufficient evidence of pretext with the following: (1) the company's failure to follow its own policies; (2) use of subjective language on his performance evaluation; (3) "papering" his personnel file with "trivialities"; and (4) the company's filling a position in the human resources department without posting the position or interviewing the hired candidate for it.

{¶60} We disregard Kudla's contention regarding the company failing to follow its own policies: the contention relates to an alleged circumstance (failure to do a background check prior to hiring an employee) entirely different from Kudla's circumstance.

{¶61} But when we consider the remaining grounds of pretext alleged by Kudla together

with the deposition testimony and other evidence presented in this case, we find that Kudla has presented sufficient evidence creating a question of fact as to whether Olympic Steel's stated reason for Kudla's termination was pretextual.

{¶62} For example, although the stated reason for Kudla's termination was his violation of the spousal opt-out policy, the record reflects that Kudla was terminated *four to five months after* the company learned of the violation,[1] and in the interim, he was not subjected to any progressive discipline, despite the company having had such a policy.[2]

{¶63} Further, there is a genuine issue of fact regarding when an employee had to notify the company of his spouse's eligibility of coverage through the spouse's employer — "immediately" or at the next open enrollment. Michael Seigal, Olympic Steel's CEO, testified that the company required "immediate" notice, which he testified meant within 30-31 days, but was not able to cite to any place where that was detailed in writing for employees. Elizabeth Wanner, the company's benefits administrator, also testified that there was an immediacy requirement in notifying the company of a spouse's coverage (31 days), but the requirement was something she verbally told employees about, and admitted that she was not involved in so advising Kudla. We do not find this 30- or 31-day requirement in writing anywhere in our de novo review.

---

[1] *See* deposition testimony of Elizabeth Wanner (benefits administrator for Olympic Steel), p. 42.

[2] Additionally, in an Olympic Steel "Questions and Answers" document given to employees, the question was posed, "What if I don't tell [Olympic Steel] my spouse works or has coverage?" The answer was: "* * * Your coverage is provided to you under the assumption of employee and dependent honesty in meeting the terms, conditions and definitions within our Plans. If it is determined however that you knowingly defrauded the Plan by providing intentionally inaccurate or misleading information, *you will immediately lose coverage.* Claims impacted by intentionally inaccurate or misleading representations in regard to the spousal eligibility policy will result in *you as the participant being held responsible for any and all claim*

**{¶64}** As Siegal aptly testified, after admitting that he did not know where the employees were informed in writing about the 30-31 day notice requirement, "[i]f [employees] don't know about it * * * the likelihood is the law would probably not let you [enforce the notice requirement]. You know, that's why there is litigation in the world. There are differences of opinion."

**{¶65}** We agree, and thus, find that summary judgment was improperly granted as to Kudla's age discrimination claim.

### B. Retaliation

**{¶66}** Kudla's retaliation claim was brought under R.C. 4112.02(I), which provides that it is "an unlawful discriminatory practice * * *[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section * * *."

**{¶67}** A plaintiff can prove retaliation through direct evidence or circumstantial evidence. *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. Franklin No. 13AP-591, 2014-Ohio-1600, ¶ 39. If, as is the case here, direct evidence does not exist, the plaintiff must make a prima facie case by establishing that

> (1) [he] engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.

*Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13. If the plaintiff makes a prima facie case for retaliation, "the burden then shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Id.* at ¶ 14, quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Assuming the

---

*payments issued on behalf of the Plan for your spouse.* * * *." (Emphasis added.)

employer can satisfy this burden, the burden then shifts back to the plaintiff "to demonstrate 'that the proffered reason was not the true reason for the employment decision.'"   *Id.*, quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

{¶68} Kudla contends that Olympic Steel retaliated against him after he contacted an attorney, who then wrote to the company alleging it was discriminating against him based on his age.

*Protected Activity*

{¶69} Filing an informal compliant of discrimination has been held to be a protected activity.   *McClair v. Univ. of Toledo Ohio*, Ct. of Cl. No. 2012-04961, 2013-Ohio-5938, ¶ 38; *see also Crawford v. Metro. Govt. of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 129 S.Ct. 846, 849, 172 L.Ed.2d 650 (2009) ("'When an employee communicates to [his] employer a belief that the employer has engaged in * * * a form of employment discrimination, that communication' virtually always 'constitutes the employee's opposition to the activity.'")   *Id.* at 276, quoting the Equal Employment Opportunity Commission Guidelines.

{¶70} Here, after the company informed Kudla that his employment would be terminated, Kudla's counsel's wrote to Olympic Steel stating what she termed as Kudla's "strong age discrimination claim" against the company.   Kudla's action in consulting with an attorney and the attorney lodging an informal complaint with the company constituted a protected activity.

*Olympic Steel Aware of Protected Activity*

{¶71} The record clearly establishes that Olympic Steel received the letter from Kudla's attorney and ostensibly took action in light of it by rescinding his first termination.

*Adverse Employment Action*

{¶72} Kudla claims that Olympic Steel retaliated against him after he sought counsel and counsel wrote the company and alleged that Kudla was being discriminated against based on his age. He contends that he was essentially demoted and cites in support of his contention, for example, that many of his responsibilities, except clerical ones, were reassigned to his younger coworkers, and that he was moved out of his office into a cubicle.

{¶73} Olympic Steel, on the other hand, denies Kudla's demotion claim and cites that his pay was not reduced, his job title did not change, and he still performed important work for the company. The company also contends that putting Kudla in a cubicle was a temporary situation necessitated by the reorganization of the human resources department; as part of the reorganization, Kudla no longer needed to discuss personal, confidential information with employees and managers and, thus, he did not need an office.

{¶74} For the reasons already discussed, we find that a genuine issue of material fact exists as to whether Kudla did suffer an adverse employment action.

*Causal Connection between Protected Activity and Adverse Action*

{¶75} If the fact-finders determine that Kudla did suffer from an adverse employment action, then we also find that a genuine issue of material fact exists as to whether the adverse action was causally connected to the protected activity (seeking counsel).

{¶76} In light of the above, the trial court improperly granted Olympic Steel's motion for summary judgment on Kudla's retaliation claim.

{¶77} Judgment reversed; case remanded for further proceedings.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County

Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules

of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
TIM McCORMACK, J., CONCUR