[Cite as *West-Kimmons v. Univ. of Toledo Med. Ctr.*, 2013-Ohio-5931.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DOMINICK D. WEST-KIMMONS

     Plaintiff

     v.

UNIVERSITY OF TOLEDO MEDICAL CENTER

     Defendant

Case No. 2011-12927

Judge Patrick M. McGrath
Magistrate Anderson M. Renick

DECISION

{¶ 1} On May 17, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On June 25, 2013, plaintiff filed her response to the motion for summary judgment. The motion is now before the court for a non-oral hearing.

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also*

*Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Plaintiff brought this action alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000(e) *et seq.*) and breach of contract. Defendant argues that plaintiff cannot prevail on her claims because it followed the progressive discipline policy set forth in a collective bargaining agreement (CBA). Defendant further contends that plaintiff cannot show that defendant's legitimate, non-discriminatory reason for reclassifying her position and subsequently terminating her employment was pretext for race discrimination.

{¶ 5} In support of its motion, defendant submitted the affidavit of Linda Torbet, defendant's Director of Operations/Human Resources and Talent Development, wherein she summarized plaintiff's employment history with defendant. In 2004, plaintiff began her employment with Medical College of Ohio, now known as the University of Toledo Medical Center (UTMC), as a part-time rehabilitation technician in the Nursing Services/ Rehabilitation Care Unit. Later that year, she initiated a transfer to another part-time position as a clerical specialist. In 2006, plaintiff was promoted to a part-time position as a licensed practical nurse (LPN) in the same unit. Plaintiff subsequently obtained a full-time position as an LPN. At plaintiff's request, she was placed on unpaid leave from July 10, 2010 through September 2, 2010, due to injuries she suffered as a result of a motor vehicle accident. Plaintiff's leave of absence was not obtained pursuant to the Family and Medical Leave Act (FMLA) inasmuch as she had already exhausted her available FMLA leave for prior absences. On August 20, 2010, plaintiff presented a "release slip" from her physician with a return-to-work date of September 7, 2010, and a restriction of "no lifting > 20 pounds." (Defendant's Exhibit B.) Plaintiff was subsequently advised that there were no available positions that she could perform with her restrictions.

{¶ 6} On October 21, 2010, plaintiff presented a return-to-work slip with no restrictions. (Defendant's Exhibit C.) Soon thereafter, plaintiff was notified that the LPN position she had formerly held had been restructured to a position which required a registered nurse (RN) classification. (Defendant's Exhibit D.) Inasmuch as plaintiff's employment with defendant was subject to a union collective bargaining agreement, she had the right either to transfer to a position that was the "same or similar" to the position she had held before she began her leave of absence, or to transfer to another position for which she was qualified. UTMC determined that no "same or similar" position existed and, after meeting with human resources personnel, plaintiff returned to work by displacing another employee and retaining her same title and rate of pay. However, plaintiff subsequently decided that she did not want to remain in the position she had selected and, pursuant to her rights under the CBA, she decided to fill a vacancy in the orthopedic clinic as a medical assistant.

{¶ 7} On October 22, 2010, plaintiff filed dual charges of racial discrimination with both the Ohio Civil Rights Commission (OCRC) and the United States Equal Employment Opportunity Commission (EEOC) alleging both that her LPN position had been unlawfully "terminated" and that defendant had twice committed a "denial of reinstatement," on August 20, 2010 and September 7, 2010, respectively. (Defendant's Exhibit G.) Plaintiff remained in her medical assistant position until April 19, 2011 when her employment was terminated following a discharge hearing on progressive discipline that was imposed pursuant to the CBA. (Torbet affidavit at ¶ 8.)

{¶ 8} On July 21, 2011, the OCRC matter was dismissed based upon a finding of "no probable cause." (Defendant's Exhibit H.) On July 28, 2011, plaintiff again dual-filed discrimination complaints with both the OCRC and the EEOC, alleging unlawful termination and retaliation for the previously filed charges of discrimination. On September 12, 2011, the EEOC adopted the July 21, 2011findings of the OCRC and

issued a notice of plaintiff's right to file a discrimination action within 90 days. (Defendant's Exhibit I.)

{¶ 9} On June 11, 2012, the OCRC issued a letter of determination regarding the July 28, 2011 complaint finding no probable cause and dismissing the complaint. (Defendant's Exhibit K.)  On July 30, 2012, the EEOC adopted the June 11, 2012 findings of the OCRC and issued a notice of plaintiff's right to file a discrimination action within 90 days.  (Defendant's Exhibit L.)

## RACE DISCRIMINATION

{¶ 10} 42 U.S.C. 2000e-2(a) states, in part: "It shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin * * *."

{¶ 11} R.C. 4112.02 states, in part: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race [or] color * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  Case law interpreting Title VII of the Civil Rights Act of 1964 is also applicable to R.C. Chapter 4112.  *Plumbers & Steamfitters Joint Apprenticeship  Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶ 12} A plaintiff in a discrimination lawsuit may pursue "essentially, two theories of employment discrimination: disparate treatment and disparate impact."  *Albaugh v. Columbus, Div. of Police*, 132 Ohio App.3d 545, 550 (10th Dist.1999), citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).  Disparate treatment discrimination has been described as "the most easily understood type of discrimination.  The employer

simply treats some people less favorably than others because of their race, color, religion, sex, or national origin." *Teamsters v. United States*, 431 U.S. 324, 335-336, fn. 15 (1977). In a disparate treatment case, liability depends upon whether the protected trait actually motivated the employer's decision. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993). For example, the "employer may have relied upon a formal, facially discriminatory policy that required adverse treatment" of protected employees, or the "employer may have been motivated by the protected trait on an ad hoc, informal basis." *Id.* "Whatever the employer's decision making process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." *Id.* Although plaintiff states in her brief that she is alleging disparate impact discrimination, the allegations clearly support a disparate treatment claim.

{¶ 13} To establish a Title VII employment discrimination claim, a plaintiff is required to either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-865 (C.A.6, 2003). If there is no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), will apply. Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination by establishing that plaintiff: 1) was a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position held; and 4) that comparable, nonprotected persons were treated more favorably. *Id.* at 802.

{¶ 14} If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action]." *Id.* If defendant succeeds in doing so, then the burden shifts back to plaintiff to demonstrate that defendant's proffered reason was not the true reason for the employment decision. *Id.* at 804.

**{¶ 15}** It is undisputed that plaintiff was a member of a protected class and that the termination of her employment with defendant was an adverse employment action. Although defendant contends that plaintiff was not qualified to perform her position based upon her disciplinary record, "the qualification prong turns on the objective qualities of the [employee], not a subjective belief on the part of the employer that the work product was deficient." *Gaglioti v. Levin Group, Inc.,* 6th Cir. No. 11-3744, LEXIS 25625 (Dec. 13, 2012). The standard for determining whether an employee is qualified for a position is whether the plaintiff "present[s] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir. 2003). The evidence shows that plaintiff was a qualified LPN and that she transferred to positions under provisions of the CBA which required her to be qualified for those positions. Thus, the court finds that plaintiff was qualified for the purposes of her discrimination claim.

**{¶ 16}** Although plaintiff has satisfied the first three elements to establish a prima facie case of race discrimination, she has not provided any evidence other than allegations in her own self-serving affidavit to show that comparable, nonprotected persons were treated more favorably. Plaintiff generally contends that she was replaced by "a person outside

**{¶ 17}** the protected class" and that "non-minority employees were not disciplined for being tardy or were not reclassified into a lower paying position." (Plaintiff's response at p. 8, citing plaintiff's affidavit.) In her affidavit, plaintiff states that she "*believe*[s] that non-minority employees were granted greater leeway to be late than [she] was * * *." (Emphasis added.) (Plaintiff's affidavit, ¶ 10, 15, and 16.) Plaintiff does not state that she has any specific personal knowledge that nonprotected persons were treated more favorably, nor does she identify any such person.

{¶ 18} "When the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude otherwise would enable the nonmoving party to avoid summary judgment in *every* case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial." *Mosley v. Miami Shores of Moraine, L.L.C.*, 2nd Dist. No. 21587, 2007-Ohio-2138, at ¶ 13 (internal quotation omitted). *See also Porter v. Saez*, 10th Dist. No. 03AP-1026, 2004-Ohio-2498, at ¶ 43.

{¶ 19} Even assuming that plaintiff has presented sufficient evidence to establish a prima facie case of race discrimination, defendant argues that she cannot overcome defendant's legitimate, nondiscriminatory reason for its decisions to reclassify the LPN positions and to terminate plaintiff's employment pursuant to the CBA. Defendant asserts that its legitimate, nondiscriminatory reason for the reclassification was to employ highly trained nurses who were qualified to handle "the increasing medical complexity" of patient needs and that plaintiff's employment was terminated in accordance with the progressive discipline procedure set forth in the CBA.

{¶ 20} With regard to the imposition of progressive discipline, defendant submitted the affidavit of Laura Malik, the manager of UTMC's orthopaedic clinic whose responsibilities included initiating discipline for employees of the clinic. In her affidavit Malik explains the "points" system that was used to record employee attendance; employees received 1/2 point when they arrived five or more minutes late. Malik averred that employee attendance was automatically tracked and recorded when employees swiped their badges and that discipline was initiated based upon the number of points that were accrued in a 12-month period. According to Malik, she maintained a log book to keep track of employee points and she treated each of her employees "the

very same way * * * irrespective of their race." (Malik affidavit, ¶ 6-7.) Between February 14, and April 15, 2011, plaintiff received four written notifications that she was in violation of defendant's policy on tardiness, the violations progressed from level 1 to level 4 violations. (Defendant's Exhibits N-Q.) Malik states that she personally met with plaintiff each time she received a corrective action; that plaintiff was aware of the number of points she had accumulated; and that plaintiff agreed with the number of points she had accumulated at her discharge hearing. Malik averred that she had disciplined four other medical assistants for tardiness, of whom three are Caucasian and one is African-American. (Malik affidavit, ¶ 16.)

{¶ 21} Upon review, the court finds that plaintiff has presented no evidence other than general statements in her self-serving affidavit to show that defendant's decisions to reclassify her LPN position and to terminate her employment were motivated by her race. Plaintiff's assertions that defendant's decisions were based upon racial animus are unsupported and do not prove pretext. Plaintiff has failed to present any evidence to overcome defendant's legitimate, nondiscriminatory reason for imposing progressive discipline which resulted in the termination of her employment. The only reasonable conclusion to be drawn from the evidence is that defendant reclassified the LPN positions to improve patient care and that plaintiff's employment was terminated in accordance with the CBA progressive discipline policy based upon plaintiff's poor attendance. Thus, defendant is entitled to judgment as a matter of law as to plaintiff's claim for race discrimination.

**BREACH OF CONTRACT**

{¶ 22} Plaintiff acknowledges that she was a member of a union and that her employment was subject to a CBA. (Plaintiff's complaint, ¶ 5.) According to Torbet, plaintiff did not have a contract of employment with defendant and the CBA between defendant and the bargaining unit applied to plaintiff.

{¶ 23} R.C. 2743.03(A)(1)   provides in part: "The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code * * *."   It is well settled that "[w]hile R.C. 2743.02(A)(1) vests exclusive subject-matter jurisdiction over suits previously barred by sovereign immunity, R.C. 4117.09(B)(1) expressly allows for suits alleging violations of collective bargaining agreements to be brought in common pleas courts.  *Moore v. Youngstown State University*, 63 Ohio App. 3d 238, 242 (10th Dist.1989).

{¶ 24} Inasmuch as plaintiff's employment was subject to a CBA, R.C. 4117.09(B)(1) specifically creates a right of action over such claims and limits the jurisdiction over this suit to the common pleas courts.  *Id.*  Accordingly, this court has no jurisdiction over plaintiff's breach of contract claim.

{¶ 25} For the foregoing reasons, the court finds that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted.

_____
PATRICK M. MCGRATH
Judge



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

DOMINICK D. WEST-KIMMONS

    Plaintiff

    v.

UNIVERSITY OF TOLEDO MEDICAL CENTER

    Defendant

Case No. 2011-12927

Judge Patrick M. McGrath
Magistrate Anderson M. Renick

<u>JUDGMENT ENTRY</u>

{¶ 26} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

 

_____
PATRICK M. MCGRATH
Judge

cc:

Bruce B. Stevens
121 East Court Street
Bowling Green, Ohio 43402-2044

Velda K. Hofacker
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

004
Filed July 18, 2013
Sent to S.C. Reporter April 30, 2014