[Cite as *McClair v. Univ. of Toledo*, 2013-Ohio-5938.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AMBER MCCLAIR

     Plaintiff

     v.

UNIVERSITY OF TOLEDO

     Defendant

Case No. 2012-04961

Judge Patrick M. McGrath
Magistrate Holly True Shaver

DECISION

{¶ 1} On May 31, 2013, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On June 26, 2013, plaintiff filed her response.[1] The motion is now before the court for a non-oral hearing pursuant to L.C.C.R. 4(D).

{¶ 2} Civ.R. 56(C) states, in part, as follows:

{¶ 3} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from

---

[1]Plaintiff's June 24, 2013, motion for leave to file a response is GRANTED, instanter. Inasmuch as defendant did not file a reply to plaintiff's response, plaintiff's June 26, 2013, motion "for permission to file supplemental response to any motion filed by defendant regarding motion for summary judgment" is DENIED as moot.

the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317 (1977).

{¶ 4} Plaintiff asserts claims of employment discrimination in violation of both state and federal law on the basis of her race and gender, hostile work environment, constructive discharge, retaliation, breach of contract, assault, and intentional infliction of emotional distress. Defendant asserts that plaintiff's claims are either barred by the applicable statute of limitations or that they fail as a matter of law. In support of its motion, defendant filed the affidavits of Catherine Harman, Cynthia O'Connell, and Lisa Simpson, along with multiple exhibits. In response, plaintiff filed her own affidavit.

{¶ 5} Plaintiff, an African American female, began her employment with defendant in October 2008 as a Data Processor III in the Pathology Department. Throughout her employment, plaintiff was a member of a union subject to a collective bargaining agreement (CBA), and she was supervised by Catherine Harman.

{¶ 6} On September 8, 2009, plaintiff sought a change of workstations due to ongoing problems with a coworker, Michelle Geiger. Plaintiff complained that Geiger was "moody" and created a negative work environment. On September 14, 2009, Harman informed plaintiff that a workstation was available for her in a cubicle shared by another employee and the pathology residents. Harman advised plaintiff to let her know when plaintiff wanted to move so that her computer and phone could be relocated by the appropriate personnel. On Saturday, September 26, 2009, plaintiff and members of her family went to her office, disassembled her workstation, and set up her office in the new cubicle. On Monday, September 28, 2009, Harman discovered that as a result of plaintiff's actions, some items from the workspace were missing and a sensitive

microscope had been damaged. Harman instructed plaintiff to return the cubicle and furniture to its previous state. In response, plaintiff left the department without authorization for 25 minutes. When plaintiff returned, Harman and plaintiff argued. Plaintiff left the office and immediately thereafter went to the emergency room at UT for medical treatment for extreme stress. The same day, plaintiff filed a report with UT's police department stating that Harman had assaulted her by pushing her as she was trying to leave the workplace.

{¶ 7} Plaintiff was placed on paid administrative leave, which was later changed to medical leave. Before plaintiff returned to work, she received a letter from William G. Logie, Vice President for Human Resources and Campus Safety, dated October 12, 2009, notifying her that her position would be eliminated effective October 26, 2009 for reasons of economy. (Defendant's Exhibit C.) The letter states, in part: "This action is in accordance with Article 19, Layoffs and Recall of the labor agreement. Pursuant to Article 19, you have the right to fill any available vacancy for which you qualify (same or lower pay level, same or lower FTE and any shift) as referenced in the contract or you may elect to take a voluntary layoff, or you may, subject to your seniority and contract provisions, also have the right to displace (1) the least senior probationary employee or (2) the least senior non-probationary employee within the bargaining unit or a temporary employee in your classification. *Union employees with two years or less of seniority must take any available vacancy subject to the contract provisions and cannot displace another employee.*" (Emphasis added.) *Id.*

{¶ 8} On November 25, 2009, plaintiff discovered a job posting for an Account Clerk III position for defendant, which was for "internal applicants only." The Account Clerk III position was set at a higher pay level than plaintiff's previous position. On January 4, 2010, Cindy Markovich, a white female, began her employment in the Account Clerk III position. Plaintiff was never recalled to a position with defendant during the two-year period of recall pursuant to the CBA.

{¶ 9} Plaintiff asserts that defendant's abolishment of her position was a pretext for discrimination. Defendant asserts that it had a legitimate business reason for the job abolishment, and that plaintiff cannot prove pretext.

## I. ASSAULT

{¶ 10} As a preliminary matter, defendant contends that any claim of assault as a result of plaintiff's incident with Harman on September 28, 2009 is barred by the applicable statute of limitations. The court agrees.

{¶ 11} R.C. 2743.16(A) provides, in relevant part:

{¶ 12} "[C]ivil actions against the state permitted by sections 2743.01 to 2743.20 of the Revised Code shall be commenced no later than two years after the date of the accrual of the cause of action *or within any shorter period that is applicable to similar suits between private parties.*" (Emphasis added.)

{¶ 13} Pursuant to R.C. 2305.111(B)[2] actions for assault must be brought within one year after the cause of action accrues. Plaintiff alleges that Harman assaulted her on September 28, 2009. Plaintiff filed her complaint on June 25, 2012. Construing the facts most strongly in plaintiff's favor, the only reasonable conclusion is that plaintiff's assault claim is time-barred. Therefore, summary judgment shall be granted as to plaintiff's claim of assault.

## II. 42 U.S.C. 1981 CLAIMS

{¶ 14} In addition, plaintiff asserts federal claims of employment discrimination under 42 U.S.C. 1981. However, while 42 U.S.C. 1981 creates rights, 42 U.S.C. 1983 provides the exclusive remedy to enforce those rights against state actors. *See Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir.2008); *Jett v. Dallas Independent*

*School District*, 491 U.S. 701, 733 (1989). It has been consistently held that actions against the state under Section 1983, Title 42, U.S.Code are not cognizable in the Court of Claims because the state is not a "person" within the meaning of Section 1983. *See, e.g.*, *Jett*, *supra*; *Burkey v. S. Ohio Corr. Facility*, 38 Ohio App.3d 170 (10th Dist.1988); *White v. Chillicothe Corr. Inst.*, 10th Dist. No. 92AP-1230 (Dec. 29, 1992). Accordingly, this court has no jurisdiction over plaintiff's claims under 42 U.S.C. 1981.

## III. BREACH OF CONTRACT

{¶ 15} Similarly, inasmuch as plaintiff asserts that she was not afforded her rights as set forth in the union contract, the Court of Claims lacks jurisdiction over such actions. Although plaintiff asserts a claim of breach of contract, there is no dispute that her employment was governed by the CBA as noted in plaintiff's complaint and the letter from Logie. Plaintiff points to no other contract of employment.

{¶ 16} R.C. 2743.03(A)(1) provides in part: "The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in section 2743.02 of the Revised Code * * *." It is well settled that "[w]hile R.C. 2743.02(A)(1) vests exclusive subject-matter jurisdiction over suits previously barred by sovereign immunity, R.C. 4117.09(B)(1) expressly allows for suits alleging violations of collective bargaining agreements to be brought in common pleas courts." *Moore v. Youngstown State University*, 63 Ohio App.3d 238, 242 (10th Dist.1989).

{¶ 17} Inasmuch as plaintiff's employment was subject to a CBA, R.C. 4117.09(B)(1) specifically creates a right of action over such claims and limits the jurisdiction over this suit to the common pleas courts. *Id.* Accordingly, this court has no jurisdiction over plaintiff's breach of contract claim.

---

[2]R.C. 2305.111(B) provides in pertinent part: "[A]n action for assault or battery shall be brought within one

## IV. EMPLOYMENT DISCRIMINATION

{¶ 18} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race * * * [or] sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 19} In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶ 20} To establish a Title VII employment discrimination claim, a plaintiff is required to either "present direct evidence of discrimination or introduce circumstantial evidence that would allow an inference of discriminatory treatment." *Johnson v. Kroger Co.*, 319 F.3d 858, 864-865 (6th Cir.2003). If there is no direct evidence of discrimination, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), will apply. Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination by establishing that she: 1) was a member of a protected class; 2) suffered an adverse employment action; 3) was qualified for the position held; and 4) that comparable, nonprotected persons were treated more favorably. *Id.* at 802.

{¶ 21} If plaintiff establishes a prima facie case, the burden of production shifts to defendant to "articulate some legitimate, nondiscriminatory reason for [its action.]" *McDonnell Douglas*, *supra*, at 802. If defendant succeeds in doing so, then the burden shifts back to plaintiff to prove that the legitimate, nondiscriminatory reasons offered by

---

year after the cause of the action accrues."

defendant were a mere pretext for discrimination. *Id.* The court must determine either: "'(1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the discharge, or (3) that the proffered reason was insufficient to motivate the discharge.'" *Owens v. Boulevard Motel Corp.*, 10th Dist. No. 97APE12-1728 (Nov. 5, 1998), quoting *Frantz v. Beechmont Pet Hosp.*, 117 Ohio App.3d 351, 359 (1st Dist.1996).

### A. Gender Discrimination

{¶ 22} It is undisputed that plaintiff, as an African-American female, is a member of two protected classes, that she suffered an adverse employment action (abolishment of her position), and that she was qualified for the position that she held. However, as to her claim of gender discrimination, plaintiff cannot establish the fourth prong of the prima facie case. In her affidavit, plaintiff identifies two individuals who were treated more favorably than she was: Cindy Markovich and Christine Ray. There is no question that plaintiff, Markovich, and Ray are all female. Therefore, inasmuch as plaintiff cannot state a prima facie case of gender discrimination, defendant is entitled to summary judgment as a matter of law on that claim.

### B. Race Discrimination

{¶ 23} With regard to her claim of race discrimination, plaintiff avers that after her job abolishment, she learned that Cindy Markovich, a white female, had taken over her previous job duties. In addition, plaintiff avers that although Christine Ray, another white female, was notified that her job was abolished at the same time that plaintiff's was, Ray was afforded the right of recall to her former or another similar position, but that plaintiff was not. Plaintiff also avers that she was not recalled as a result of her "complaints about job harassment and a hostile work environment created by [her] supervisors." (Plaintiff's Affidavit, ¶ 12.)

{¶ 24} In order to establish a prima facie case of discrimination based upon treatment of comparables, a plaintiff must show that the other persons referenced were

comparable in all respects. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir.1992). A "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'; rather, * * * the plaintiff and the employee with whom the plaintiff seeks to compare [herself] * * * must be similar in 'all of the relevant aspects.' The individuals with whom the plaintiff seeks to compare * * * [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citations omitted.) *Clark v. City of Dublin,* 10th Dist. No. 01AP-458, 2002-Ohio-1440, ¶ 29.

{¶ 25} With regard to the Account Clerk III position, defendant submitted the affidavit of Cynthia O'Connell, defendant's Laboratory Manager at all times relevant. O'Connell avers, in part:

{¶ 26} "The Account Clerk III position was a higher pay range (27) than the Data Processor III position (25) and had greater duties and responsibilities. Ms. McClair was not qualified for the Account Clerk III position, nor was she entitled to be called back into that position as it was at a higher pay range and was a completely different position. The Data Processor III position Ms. McClair previously held was a low level position that did not require the skills and knowledge, including medical coding, of the Account Clerk III position. It should also be noted that Ms. McClair had started working for UT in 2008; Ms. Markovich began in 1989. Thus, any disparity in Ms. McClair's and Ms. Markovich's pay was due to the fact that Ms. Markovich occupied a position in a higher pay range, and had significantly more seniority than Ms. McClair had. * * * ." (O'Connell Affidavit, ¶ 17.)

{¶ 27} Construing the facts most strongly in favor of plaintiff, the only reasonable conclusion is that Markovich, who began her employment in 1989, had more seniority than plaintiff, who began her employment in 2008. In sum, plaintiff was not "similarly

situated" to Markovich.   Therefore, plaintiff has failed to prove a prima facie claim of racial discrimination based upon treatment of comparables as it relates to Markovich.

{¶ 28} With regard to Ray, plaintiff has failed to bring forth sufficient detail as to Ray's qualifications to establish whether they were comparable.   However, even assuming that plaintiff had presented sufficient evidence to establish a prima facie case of race discrimination, defendant argues that she cannot overcome defendant's legitimate, nondiscriminatory reason of budget cuts for its decision to abolish plaintiff's position.

{¶ 29} O'Connell also states in her affidavit:

{¶ 30} "In early October 2009, I was summoned to a meeting with Mark Chastang.   I was informed that due to economic constraints the medical center was once again going through budget cuts and the resulting layoffs.   Like other departments, I was told that I needed to cut the budget by eliminating the equivalent of four full-time employees.   I reviewed the various cost centers that I oversaw and determined that I would have to make a cut in the administrative cost center where the positions were clerical.   At the time, the following positions/individuals were the only ones in that cost center from which I had to make cuts:

| | | |
|---|---|---|
| a. | Account Specialist III, Michele Geiger |
| b. | Account Specialist III, Terri Grover |
| c. | Core Lab Coordinator, Michelle Bartkowiak |
| d. | Laboratory Manager, Cindy O'Connell |
| e. | Data Processor III, Amber McClair |

{¶ 31} "* * * I further recommended that the Data Processor III position be abolished as it was the lowest level position in the cost center and the duties of the position could most easily be absorbed by existing personnel.   The Data Processor III position did not require special training and skills like other positions in the cost center. The duties of the position could even be given to transcriptionists in another cost center.

Thus, it made sense to select this position for abolishment.  This position was held by Amber McClair."  (O'Connell Affidavit, ¶ 5-6.)

{¶ 32} O'Connell further avers that she also recommended that two part-time Laboratory Technician I positions be abolished; that Kaylee Goldsmith and Christine Ray (both Caucasian) occupied those positions; and that Goldsmith, McClair, and Ray all received notices of abolishment in October 2009.  (O'Connell Affidavit, ¶ 7-11.) Furthermore, O'Connell avers:

{¶ 33} "At the time I recommended abolishment of these positions, I had no knowledge of any complaints of racial discrimination or harassment from any of the individuals occupying those positions, including Amber McClair.  I was aware that in September of 2009, Amber McClair had brought forth a concern that a co-worker, Michelle Geiger, was moody, but she had not stated that she thought it was racial discrimination or harassment.  I was never aware of any allegations by Ms. McClair as to racial discrimination and/or harassment at any time while she was employed at UT." (*Id.*, ¶ 12.)

{¶ 34} Upon review, the court finds that plaintiff has presented no evidence other than general statements in her self-serving affidavit to show that defendant's decision to abolish her position was motivated by her race.  Plaintiff's assertions that defendant's decision was based upon racial animus are unsupported and do not prove pretext. Plaintiff has failed to present any evidence to overcome defendant's legitimate, nondiscriminatory reason for abolishing her position.  The only reasonable conclusion to be drawn from the evidence is that defendant abolished plaintiff's position for budgetary reasons, that plaintiff was not entitled to be called back into the Account Clerk III position because it entailed more responsibilities and was in a higher pay range, and that Cindy Markovich had more seniority than plaintiff had.  Furthermore, plaintiff's claim that she was entitled to "bump" another employee from their position fails inasmuch as plaintiff had less than two years of seniority when her position was abolished, and

Logie's letter specifically states that union employees with two years or less of seniority cannot displace another employee.  Thus, defendant is entitled to judgment as a matter of law as to plaintiff's claim for race discrimination.

### C. Constructive Discharge

{¶ 35} With regard to her claim for constructive discharge, "[c]onstructive discharge is not itself a cause of action, but rather a means of proving the element of an adverse employment action where the employee resigns instead of being fired." *Fernandez v. City of Pataskala*, S.D.Ohio No. 2:05-CV-75, 2006 U.S. Dist. LEXIS 82136 (Nov. 9, 2006).  "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 1996-Ohio-265, paragraph four of the syllabus.  It is undisputed that plaintiff was placed on a layoff;  she did not resign. Therefore, her claim of constructive discharge fails as a matter of law.

### D. Hostile Work Environment

{¶ 36} A hostile work environment is defined as one in which "*discriminatory* intimidation, ridicule, and insult," permeate the workplace.  The working conditions must be such that they are "sufficiently severe or pervasive" to create "an abusive working environment."  (Emphasis added.)  *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 21 (1993), quoting *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67 (1986).  As suggested by the definition, a hostile work environment claim is necessarily premised upon some form of prohibited discrimination.  Although plaintiff states in her affidavit that she felt that he was subjected to a hostile work environment, she has failed to present evidence that she endured intimidation, ridicule, or insult that was based upon any protected trait; i.e., her race or sex.  Plaintiff did complain that Michele Geiger was moody.  However, Harman states in her affidavit: "Throughout all my written and verbal communications with Ms. McClair and her union representative, neither of them made

any mention of racial discrimination and/or harassment." (Harman Affidavit, ¶ 10.) Plaintiff has not brought forth any evidence to rebut Harman's statement. Accordingly, the court finds that plaintiff has failed to state a prima facie claim of harassment based upon a hostile work environment.

## V. RETALIATION

{¶ 37} To establish a prima facie case of unlawful retaliation under Ohio law, the employee must establish: 1) that she engaged in a protected activity; 2) that she was the subject of an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse action. *Mowery v. City of Columbus,* 10th Dist. No. 05AP-266, 2006-Ohio-1153, at ¶ 21.

{¶ 38} For purposes of a retaliation claim, opposition to "demeaning and harassing conduct," without complaining of illegal discrimination or taking a stand against such discrimination, does not constitute a protected activity. *Murray v. Sears*, N.D.Ohio No. 1:09 CV 702, 2010 U.S. Dist. LEXIS 34256 (April 7, 2010); *see also Fox v. Eagle Distributing Co.*, 510 F.3d 587, 591-592 (6th Cir.2007).

{¶ 39} Defendant submitted the deposition of Lisa Simpson, Human Resources and Talent Development Consultant, wherein she states, in part:

{¶ 40} "UT has a policy prohibiting racial discrimination and/or harassment which is disseminated among all UT employees. Employees who have been subjected to such conduct can file a complaint with the office of institutional diversity or with the department of human resources. Ms. McClair never made a formal or informal complaint of racial discrimination and/or harassment while she was employed at UT." (Simpson Affidavit, ¶ 14.)

{¶ 41} Although plaintiff asserts that her position was abolished on the basis of racial discrimination, plaintiff has not presented any evidence to rebut the statements made in Simpson's affidavit. Therefore, the only reasonable conclusion is that plaintiff

did not engage in a protected activity that gives rise to a claim for retaliation. Accordingly, the court finds that plaintiff has failed to state a prima facie claim of retaliation.

## VI.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

{¶ 42} The elements of intentional infliction of emotional distress are that "(1) defendant intended to cause emotional distress, or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was extreme and outrageous; (3) defendant's actions proximately caused plaintiff's psychic injury; and (4) the mental anguish plaintiff suffered was serious." *Hanly v. Riverside Methodist Hosp.*, 78 Ohio App.3d 73, 82 (10th Dist.1991).

{¶ 43} Termination of employment, even if discriminatory, in and of itself cannot rise to the level of extreme and outrageous conduct required to prove intentional infliction of emotional distress. *Godfredson v. Hess & Clark*, 173 F.3d 365 (6th Cir.1999).  Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that any alleged conduct of defendant is not of the extreme and outrageous character required to prevail upon a claim for intentional infliction of emotional distress.  *See Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374 (1983). Accordingly, defendant is entitled to summary judgment as a matter of law on plaintiff's claim for intentional infliction of emotional distress.

{¶ 44} For the foregoing reasons, the court finds that there are no genuine issues as to any material fact and that defendant is entitled to judgment as a matter of law. Accordingly, defendant's motion for summary judgment shall be granted.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

AMBER MCCLAIR

    Plaintiff

    v.

UNIVERSITY OF TOLEDO

    Defendant

Case No. 2012-04961

Judge Patrick M. McGrath
Magistrate Holly True Shaver

<u>JUDGMENT ENTRY</u>

{¶ 45} A non-oral hearing was conducted in this case upon defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Lafayette E. Tolliver                          Velda K. Hofacker
316 North Michigan, #514                  Assistant Attorney General
Toledo, Ohio 43604                          150 East Gay Street, 18th Floor
                                                  Columbus, Ohio 43215-3130

002
Filed August 7, 2013
Sent to S.C. Reporter April 30, 2014